IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CHARLES R. GETZ, JR., | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) C.A. No. 24-949 (MN) |
| | ) |
| BRIAN EMIG, Warden, and | ) |
| ATTORNEY GENERAL OF THE | ) |
| STATE OF DELAWARE, | ) |
| | ) |
| Respondents. | ) |

**<u>MEMORANDUM OPINION</u>**

Charles R. Getz, Jr. – Pro se Petitioner.

Kathryn J. Garrison, Deputy Attorney General, Delaware Department of Justice, Dover, DE – Attorney for Respondents.

February 20, 2026
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE:**

Petitioner Charles R. Getz, Jr. filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (D.I. 1). Respondents filed an Answer, to which Petitioner filed a Reply. (D.I. 18; D.I. 22). For the foregoing reasons, Petitioner is ordered to show cause why the Petition should not be dismissed for being time-barred.

### I. BACKGROUND

In 1989, a Delaware Superior Court jury found Petitioner guilty of the first-degree rape of his 11-year-old daughter. *See Getz v. Bd. of Parole*, No. 23-3014, 2024 WL 3042385, at *1 (3d Cir. June 18, 2024) ("*Getz 2024*"). The Superior Court sentenced Petitioner to life imprisonment with eligibility for parole after twenty years. *See id.* The Delaware Supreme Court affirmed on direct appeal. *See id.* Petitioner sought but was denied state post-conviction relief. *See id.* In 1997, Petitioner filed a habeas petition pursuant to 28 U.S.C. § 2254, which this Court denied.[1] *See id.* The Third Circuit Court of Appeals declined to grant Petitioner a certificate of appealability. *See id.* Petitioner filed multiple applications to file second or successive habeas petitions, which the Third Circuit denied. *See id.*

On October 27, 2021, the Board of Parole ("Parole Board") granted Petitioner parole of one year Level IV Home Confinement followed by Level III supervision. *See Getz v. State*, No. 95, 2022, 2022 WL 2813775, at *1 (Del. July 18, 2022) ("*Getz 2022*"); D.I. 19-3 at 89-90.

---

[1] Although Petitioner previously filed a habeas petition that was decided on the merits, Respondents correctly acknowledge that the claims in the instant Petition are not barred under 28 U.S.C. § 2244(b) as second or successive because the claims herein were not ripe for review at the conclusion of Petitioner's 1997 petition. *See Magwood v. Patterson*, 561 U.S. 320, 333 (2010) (holding where "there is a 'new judgment intervening between the two habeas petitions,' . . . an application challenging the resulting new judgment is not 'second or successive' at all"); *Hartmann v. May*, C.A. No. 20-33-GBW, 2023 WL 2655188, at *6 (D. Del. Mar. 27, 2023) (finding habeas claims related to violations of probation that occurred after denial of earlier habeas petition were not second or successive).

The Parole Board imposed special conditions on Petitioner's parole, including that: (1) Petitioner must undergo a Treatment Access Center ("TASC") evaluation and follow all treatment recommendations; (2) Petitioner's housing must comply with sex offender restrictions; and (3) Petitioner must register as a Tier III Sex Offender. (D.I. 19-3 at 89-90). On October 31, 2021, Petitioner sent a "Petition to Modify Parole Release Conditions" to the Parole Board. (D.I. 19-3 at 91-96). Petitioner asserts that the Parole Board did not respond and there is nothing in the record to indicate otherwise. (D.I. 1 at 13).

On November 8, 2021, Petitioner was released and signed the Sex Offender Conditions of Supervision with a notation that he was signing under duress. *See Getz 2022*, 2022 WL 2813775, at *1; D.I. 19-3 at 102. These additional conditions indicated they were "in accordance with SENTAC guidelines"[2] and included, among other things, that Petitioner had to "participate in a sex offender assessment, evaluation, and treatment . . . including polygraph testing" and that he would be "financially responsible for all evaluations and treatment." (D.I. 19-3 at 102).

On November 22, 2021, Petitioner filed a Motion for Redesignation of Tier Level or to be Relieved from the Sex Offender Registry ("Redesignation Motion") with the Delaware Superior Court. *See Getz 2022*, 2022 WL 2813775, at *1. In the Redesignation Motion, Petitioner raised a multitude of claims relating to the conditions placed on his parole, including those based on the SENTAC guidelines. (D.I. 19-12; D.I. 19-13; D.I. 19-14). The State filed a response. *See Getz 2022*, 2022 WL 2813775, at *1. On February 25, 2022, the Superior Court held a hearing at which the court informed Petitioner that "demands that the Court intervene to address certain conditions imposed by an agency should be addressed through the mandamus process rather than through the motion process." (D.I. 19-18 at 15). Accordingly, the Delaware Superior Court did

---

[2]   SENTAC is an abbreviation for Sentencing and Accountability Commission.

not address all of Petitioner's claims but rather limited its ruling to finding that the Delaware Supreme Court had previously rejected the argument that retroactive application of the sex offender registration and companion requirements violates the ex post facto clause and that Petitioner failed to satisfy the statutory requirements for redesignation. (D.I. 19-18 at 14-15; D.I. 19-20). Although Petitioner raised a number of issues on appeal, the Delaware Supreme Court, limited its analysis to: (1) whether "requiring [Petitioner] to register as a Tier III sex offender and comply with the Sex Offender Conditions of Supervision while on parole is a violation of the *ex post facto* clause of the United States Constitution;" (2) whether Petitioner qualifies as a sex offender; and (3) whether "the Board of Parole could not require him to register as a Tier III sex offender." *See Getz 2022*, 2022 WL 2813775, at *1 The Delaware Supreme Court affirmed the decision of Superior Court on July 18, 2022. *See id.* Petitioner filed a Motion for Rehearing En Banc, but the Delaware Supreme Court determined that the motion was untimely and the court no longer had jurisdiction. (D.I. 1-5 at 8-11; D.I. 1-2 at 49-50).

After being released, Petitioner refused to comply with some of the conditions placed on his parole. As a result, an administrative warrant for his arrest was executed on January 25, 2022. (D.I. 18-3). On June 20, 2023, the Parole Board held a hearing and revoked Petitioner's parole. (D.I. 1-6 at 25). In a letter dated June 22, 2023, the Parole Board confirmed the revocation and further informed Petitioner that the Board decided to "[r]eturn [Petitioner] to Level V to complete sex offender treatment programs" and that he would be eligible to reapply for parole after completion of the programs. (*Id.*).

On November 23, 2022, Petitioner filed a pro se civil rights complaint pursuant to 42 U.S.C. § 1983 in this Court alleging various constitutional violations arising out of the imposition of his parole conditions, the revocation of his parole, and the Delaware Supreme

Court's judgment regarding his Redesignation Motion. *See Getz 2024*, 2024 WL 3042385, at *1; *Getz v. Del. Bd. of Parole*, No. CV 22-1536 (MN), 2023 WL 3848364, at *1 (D. Del. June 6, 2023) ("*Getz 2023*"). Finding the action was barred by the rule in *Heck v. Humphrey*,[3] the Court dismissed the complaint. *See Getz 2023*, 2023 WL 3848364, at *2. Petitioner was given the option of notifying the Court by July 14, 2023 if he wanted to open a new habeas case and have the § 1983 complaint docketed as the opening filing. *See Getz 2023*, 2023 WL 3848364, at *3; D.I. 1-3 at 4. Instead of pursuing that option, Petitioner filed a Motion for Reconsideration, which the Court denied on October 23, 2023. *See Getz v. Bd. of Parole*, No. CV 22-1536 (MN), 2023 WL 7751572, at *1 (D. Del. Oct. 23, 2023). On June 18, 2024, the Third Circuit affirmed both the dismissal and denial of the Motion for Reconsideration. *See Getz 2024*, 2024 WL 3042385.

Petitioner filed the instant Petition on August 15, 2024. (D.I. 1). The Petition includes the following grounds, as summarized by the Court, for relief: (1) the Parole Board's imposition of the Delaware Sex Offender Statute's tier level designation, registration, and other conditions violates the Ex Post Facto and Due Process Clauses; (2) the Parole Board's requirement that Petitioner register as a sex offender violates his civil rights under the Due Process and Equal Protection Clauses; (3) the Parole Board and probation officer's imposition of SENTAC conditions violates the Ex Post Facto and Due Process Clauses; (4) the Parole Board and probation officer's imposition of the Sex Offender Statute and SENTAC conditions denied Petitioner the right to be at sentencing, the right to have counsel at sentencing, and the right to allocute at sentencing in violation of the Due Process Clause; (5) the Parole Board, probation officer and

---

[3] In *Heck*, the United States Supreme Court held that, where success in a § 1983 action would necessarily imply the invalidity of a conviction or sentence, an individual's suit for damages or equitable relief is barred unless he can demonstrate that his conviction or sentence has been invalidated. *See* 512 U.S. 477, 487-87 (1994).

4

Department of Justice are agents of the executive branch and encroached on the judiciary by imposing the Sex Offender Statute and SENTAC conditions, violating the Separation of Powers Clause and thereby resulting in a due process violation; (6) the probation officer and treatment counselor's requirement that Petitioner "confess" to the rape violates First, Fifth, Ninth and Fourteenth Amendments; (7) the probations officer's sanction and violation of parole for failing to "confess" constitutes Double Jeopardy and violates the First, Fifth, Sixth, Ninth and Fourteenth Amendments; (8) the Delaware Sex Offender Statute established two additional elements in the prosecution of a sex offense (that the defendant has a psychological predisposition to reoffend and that the defendant is mentally ill), which the State was not required to prove at the time of Petitioner's trial, thereby denying him due process; (9) the revocation of parole for refusing to "confess" and "take responsibility" and the requirement that Petitioner complete a mandatory treatment program to become re-eligible for parole violates the Ex Post Facto and Due Process Clauses; and (10) the prison requiring Petitioner to participate in sex offender treatment and giving him a disciplinary sanction for refusing treatment violates the Ex Post Facto and Due Process Clauses. (D.I. 1). In their Answer, Respondents contend that the Petition is subject to dismissal without prejudice because it contains both exhausted and unexhausted claims. (D.I. 18 at 23). Notwithstanding the exhaustion requirement, Respondents allege that at least one of Petitioner's claims is not cognizable on habeas review and that the remaining claims are meritless. (D.I. 18 at 23, 69-70).

## II. <u>STATUTE OF LIMITATIONS</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") prescribes a one-year limitations period for the filing of habeas petitions by state prisoners, which begins to run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). AEDPA's limitations period is subject to statutory and equitable tolling. *See* 28 U.S.C. § 2244(d)(2) (statutory tolling); *Holland v. Florida*, 560 U.S. 631 (2010) (equitable tolling). A petitioner may also be excused from failing to comply with the limitations period by making a gateway showing of actual innocence. *Wallace v. Superintendent Mahanoy SCI*, 2 F.4th 133, 151 (3d Cir. 2021). AEDPA's statute of limitations is applied on a claim-by-claim basis. *See Fielder v. Varner*, 379 F.3d 113, 118 (3d Cir. 2004); *see also Pace v. DiGuglielmo*, 544 U.S. 408, 415-16 (2005) (indicating AEDPA limitations period calculated with claim-by-claim consideration). District courts may consider the timeliness of a state prisoner's habeas petition sua sponte. *See Day v. McDonough*, 547 U.S. 198, 209-10 (2006); *In re Rosado*, 7 F.4th 152, 157 (3d Cir. 2021).

### A. Calculation of Petitioner's Deadline

Neither Petitioner nor Respondents addressed the timeliness of the Petition in their pleadings.[4] Although Petitioner completed and submitted portions of the form AO 241 Petition

---

[4] Although a district court cannot override a deliberate waiver of a limitations defense, it can raise timeliness after respondents have answered a petition without contesting its

6

Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, Petitioner did not include Page 14 of 16, which includes a section titled "Timeliness of Petition" providing "[i]f your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition."  In the context of parole, AEDPA's one-year limitations period runs from the date of the Parole Board's decision.  *See Smith v. May*, No. CV 22-544-GBW, 2022 WL 7008284, at *3 (D. Del. Oct. 11, 2022) (declaring "[w]hen a habeas petition challenges the denial of parole, AEDPA's one-year limitations period runs from the date of the parole denial").  In Petitioner's case, the one-year statute of limitations began running on different dates for different claims:

### 1.     Claims Relating to Petitioner's Conditions of Parole

Petitioner does not assert, and the Court does not discern, any facts triggering the application of § 2244(d)(1)(B) or (C).  Under § 2244(d)(1)(A), the one-year period of limitations began to run when Petitioner was granted parole on October 27, 2021.  Arguably, Petitioner was not made aware of all of the conditions of parole until November 8, 2021, the day he was released and signed papers notifying him of his parole conditions – possibly triggering the application of § 2244(d)(1)(D).  Without deciding which date is applicable to Petitioner's claims, the Court's analysis will assume that the limitations period for claims relating to the conditions of Petitioner's parole began to run on the later date of November 8, 2021.  Applying the one-year limitations period to that date, Petitioner had until November 8, 2022 to timely file a habeas petition.  Petitioner, however, did not file the instant Petition until August 15, 2024, over one year and nine months after that deadline.  Thus, Petitioner's claims relating to the conditions of his parole are

---

timeliness.  *See Wood v. Milyard*, 566 U.S. 463, 466 (2012); *Day*, 547 U.S. at 202.  Respondents have given no indication that they are deliberately waiving a limitations defense.

time-barred and should be dismissed, unless the limitations period can be statutorily or equitably tolled, or Petitioner makes a gateway showing of actual innocence.

### 2. Claims Relating to the Revocation of Parole

For claims relating to the revocation of Petitioner's parole, the limitations period began running when it was revoked on June 20, 2023, or at the latest, on June 22, 2023, when the board issued a letter confirming the parole revocation. Again applying the later date without deciding the correct trigger date, Petitioner had until June 24, 2024[5] to timely file a habeas petition. Petitioner, however, did not file the instant Petition until August 15, 2024, almost two months after that deadline. Therefore, Petitioner's claims relating to the revocation of his parole are time-barred and should be dismissed, unless the limitations period can be statutorily or equitably tolled, or Petitioner makes a gateway showing of actual innocence.

### B. Statutory Tolling

Section 2244(d)(2) provides "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

### 1. Claims Relating to Petitioner's Conditions of Parole

#### a. Claims Raised in the Redesignation Motion and Addressed by the Delaware Superior and Supreme Court

As stated above, the limitations period for claims relating to the conditions of Petitioner's parole began running on November 8, 2021. For claims raised in the Redesignation Motion and addressed by the Delaware Superior and Supreme Courts, the limitations period ran for thirteen

---

[5] June 22, 2024 fell on a Saturday, therefore, pursuant to Rule 6 of the Federal Rules of Civil Procedure, the period extended to Monday, June 24, 2024.

8

days until Petitioner filed his Redesignation Motion on November 22, 2021. The Court assumes without deciding that the Redesignation Motion and the appeal thereof tolled the running of the limitations period because, even if tolled during the pendency of both, Petitioner still failed to file his Petition within the one-year limitations period. Petitioner did not file a petition for a writ of certiorari with the United States Supreme Court, and it is unclear whether the limitations period should also be tolled for the ninety days Petitioner had to do so. *Compare Stokes v. Dist. Att'y of Philadelphia*, 247 F.3d 539, 542 (3d Cir. 2001) (holding time during which state prisoner may file petition for writ of certiorari in United States Supreme Court from denial of state post-conviction petition does not toll AEDPA's statute of limitations) *with Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012) (holding AEDPA's limitation period does not begin to run when state prisoner appeals state court judgment but does not seek certiorari review until after expiration of ninety-day period allowed for seeking certiorari review). Assuming the tolling continued, ninety days after the Delaware Supreme Court's July 18, 2022 Order affirming the denial of the Redesignation Motion fell on October 16, 2022. October 16, 2022 was a Sunday and, pursuant to Rule 30 of the Rules of the Supreme Court of the United States, the period extended to Monday, October 17, 2022, from which the remaining 352 days on the limitations period ran until October 4, 2023. The Petition, however, was not filed until August 15, 2024.

Even after applying all potentially available statutory tolling, Petitioner's claims relating to his conditions of parole that were properly raised in his Redesignation Motion and addressed by both the Delaware Superior and Supreme Courts are time-barred, unless equitable tolling applies or Petitioner establishes a gateway claim of actual innocence.

9

### b. Claims Relating to the Conditions of Parole That Were Either Not Raised or Not Properly Raised in State Court

Petitioner's remaining claims relating to the conditions of his parole were either not raised at all or not properly raised in the state courts. As indicated by the Delaware Superior Court at the hearing for the Redesignation Motion, "demands that the Court intervene to address certain conditions imposed by an agency should be addressed through the mandamus process rather than through the motion process." (D.I. 19-18 at 15). Delaware law provides that challenges to the decisions of the Parole Board can be brought through either a petition for a writ of mandamus filed in the Superior Court or a petition seeking a writ of certiorari filed in the Delaware Supreme Court. *See Carter v. Williams*, No. CIV.A.00-856-SLR, 2002 WL 531231, at *3 (D. Del. Apr. 2, 2002) (citing Delaware Supreme Court precedents recognizing petition for writ of mandamus and petition for writ of certiorari as procedural vehicles available to challenge Parole Board decisions).[6] Petitioner, however, did not file either a petition for a writ of mandamus or a petition for a writ of certiorari in state court. Therefore, there is no available statutory tolling and AEDPA's limitations period ran continuously until it expired on November 9, 2022, over one year and nine months before Petitioner filed his Petition on August 15, 2024. The Court further notes that, even if the claims that were presented to but not addressed by the Delaware state courts were considered properly filed, they would still be untimely for the reasons provided in section II.B.1.a.

---

[6] In *Eskridge v. Casson*, 471 F. Supp. 98, 99 (D. Del. 1979), this Court stated, "Delaware does not provide any procedure by which a prisoner may challenge a decision by the [Parole] Board." The Court, however, finds more recent authority, as cited in *Carter*, from the Delaware Supreme Court regarding the procedures available to challenge parole decisions in Delaware to be controlling. *See Carter*, 2002 WL 531231, at *3 (citing *Bradley v. Del. Parole Bd.*, 460 A.2d 532 (Del.1983) (utilizing petition for writ of mandamus to challenge denial of parole) and *Semick v. Dep't of Corr.*, 477 A.2d 707 (Del.1984) (treating challenges to Parole Board's actions as before court on a Writ of Certiorari)); *see also Brooks v. Henderson*, No. 92, 2023, 2023 WL 6842462, at *4 (Del. Oct. 16, 2023) (finding petition for writ of mandamus was proper procedure to raise due process challenge regarding actions of Parole Board).

Accordingly, Petitioner's claims relating to his conditions of parole that were either not raised or not properly raised in state court are time-barred, unless equitable tolling applies or Petitioner establishes a gateway claim of actual innocence.

### 2. Claims Relating to the Revocation of Parole

Petitioner also did not file either a petition for a writ of mandamus or a petition for a writ of certiorari in state court challenging the revocation of his parole. Therefore, there likewise is no available statutory tolling for Petitioner's claims relating to the revocation of his parole, and AEDPA's limitations period ran continuously for those claims until it expired on June 25, 2024, almost two months before Petitioner filed his Petition on August 15, 2024. Accordingly, these claims are time-barred, unless equitable tolling applies or Petitioner establishes a gateway claim of actual innocence.

### C. Equitable Tolling and Actual Innocence

Given these circumstances, Petitioner's claims are untimely and should be dismissed unless Petitioner can demonstrate that equitable tolling applies or make a gateway showing of actual innocence. The one-year limitations period may be tolled for equitable reasons in rare circumstances when the petitioner demonstrates "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *See Martin v. Adm'r N.J. State Prison*, 23 F.4th 261, 272–73 (3d Cir. 2022) (citing *Holland*, 560 U.S. at 649 (quoting *Pace*, 544 U.S. at 418)). To satisfy the diligence prong, a petitioner must demonstrate he has been pursuing his rights with reasonable diligence, a fact-specific inquiry that depends on the petitioner's circumstances. *See Martin*, 23 F.4th at 273. The obligation to act diligently pertains not only to the filing of the federal habeas petition, but also while exhausting state court remedies. *See LaCava v. Kyler*, 398 F.3d 271, 277 (3d Cir. 2005). "The fact that a petitioner is proceeding pro se does not insulate him from the 'reasonable

11

diligence' inquiry and his lack of legal knowledge or legal training does not alone justify equitable tolling." *Ross v. Varano*, 712 F.3d 784, 799–800 (3d Cir. 2013). Additionally, a garden variety of excusable neglect does not warrant equitable tolling. *See Holland*, 560 U.S. at 650–51.

As for the extraordinary circumstance requirement, "the relevant inquiry is not whether the circumstance alleged to be extraordinary is unique to the petitioner, but how severe an obstacle it creates with respect to meeting AEDPA's one-year deadline." *Pabon v. Mahanoy*, 654 F.3d 385, 401 (3d Cir. 2011). An extraordinary circumstance will warrant equitable tolling only if there is "a causal connection, or nexus, between the extraordinary circumstances [the petitioner] faced and the petitioner's failure to file a timely federal petition." *See Ross*, 712 F.3d at 803.

Finally, a credible claim of actual innocence may serve as an "equitable exception" that can overcome the bar of AEDPA's one-year limitations period. *See McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013); *Wallace*, 2 F.4th at 150–151. "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). To satisfy this extraordinary exception, "a petitioner must (1) present new, reliable evidence of his innocence; and (2) show by a preponderance of the evidence that it is more likely than not that no reasonable juror would have convicted him (*i.e.,* a reasonable juror would have reasonable doubt about his guilt) in light of the new evidence." *Wallace*, 2 F.4th at 151. "The standard does not require absolute certainty of guilt or innocence, but it is demanding and will be satisfied only in rare and extraordinary cases where the evidence of innocence is so strong that it undermines confidence in the trial's outcome." *Id.*

The Court having raised the issue of timeliness sua sponte, the parties must be accorded fair notice and an opportunity to present their positions. *See Day*, 547 U.S. at 210; *United States v. Bendolph*, 409 F.3d 155, 158 (3d Cir. 2005). "Further, the court must assure itself that the

petitioner is not significantly prejudiced by the delayed focus on the limitation issue, and 'determine whether the interests of justice would be better served' by addressing the merits or by dismissing the petition as time barred." *Day,* 547 U.S. at 210; *see also Bendolph*, 409 F.3d at 158 (requiring prejudice analysis when district court raises AEDPA statute of limitations issue sua sponte after initial summary dismissal period).

Accordingly, Petitioner shall be given an opportunity to show cause why the claims in his Petition should not be dismissed as untimely under 28 U.S.C. § 2244(d)(1). In his response, Petitioner shall state with specificity any facts he believes entitle him to equitable tolling of the statute of limitations and/or demonstrate that he falls within the actual innocence exception. Petitioner must also address if and how the delayed focus on the limitations issue prejudices him. Respondents will likewise be given an opportunity to file a reply.

### III.    EXHAUSTION AND "MIXED" PETITIONS

AEDPA prohibits federal district courts from granting habeas relief unless the petitioner has "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2244(b)(1)(A). To exhaust state remedies, a petitioner must "fairly present" the substance of the habeas claims to the state's highest court. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 842–48 (1999); *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997). A petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

District courts may not adjudicate "mixed petitions" – habeas petitions raising both exhausted and unexhausted claims. *See Rhines v. Weber*, 544 U.S. 269 (2005). When presented with a mixed petition, a district court has four options: (1) dismiss the petition without prejudice if AEDPA's limitations period will not bar the petitioner from returning to federal court after

13

exhausting his claims; (2) stay the petition pending the outcome of state proceedings; (3) allow the petitioner to delete all unexhausted claims and proceed on the remainder; or (4) if the unexhausted claims are meritless, deny them under § 2254(b)(2). *See Rhines*, 544 U.S. at 278; *McLaughlin v. Shannon*, 454 F. App'x 83, 86 (3d Cir. 2011). A "district court should grant a stay only where 'the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics.'" *Heleva v. Brooks*, 581 F.3d 187, 190 (3d Cir. 2009) (citing *Rhines*, 544 U.S. at 278). "[T]he time remaining on the one-year clock to file a federal habeas petition could reasonably be a component in the 'good cause' determination from *Rhines*." *See Gerber v. Varano*, 512 F. App'x 131, 135 (3d Cir. 2013) (citing *Heleva*, 581 F.3d at 192-93 & n.3).

In his Petition under the heading "Exhaustion of State Remedies," Petitioner asserts that he filed a Petition to Modify Parole Release Conditions with the Parole Board on October 31, 2021 and that the Board did not respond, that he filed the Redesignation Motion and appealed the decision, that state habeas corpus is not the appropriate remedy for contesting the revocation of parole, and that the Delaware Superior Court is given no statutory jurisdiction to review findings of the Parole Board. (D.I. 1 at 9). In his Reply, Petitioner further cites to *Eskridge v. Casson*, 471 F. Supp. 98, 99 (D. Del. 1979), for its statement that "[s]ince, however, Delaware does not provide any procedure by which a prisoner may challenge a decision by the Board, the exhaustion requirement has been met." (D.I. 22 at 2).

First, the Court notes that the Parole Board has discretion to review its decisions in limited circumstances not applicable in Petitioner's case. *See* Rule 16 of the Delaware Board of Parole Rules ("The Board may review any Board decision upon receipt of information of substantial significance not available on the date of the hearing that could have influenced the decision").

Therefore, the Board was under no obligation to respond to Petitioner's request to modify his parole conditions. Second, the Court recognizes that Petitioner fairly presented his ex post facto claim in Ground 1 in his Redesignation Motion and appeal thereof and that claim is, therefore, exhausted. Third, the fact that state habeas corpus is not the appropriate remedy for contesting the revocation of parole and that the Delaware Superior Court is given no statutory jurisdiction to review findings of the parole board does not mean that Delaware does not have other procedures in place for contesting decisions of the parole board. In fact, Delaware Supreme Court precedents recognize both petitions for a writ of mandamus and petitions for a writ of certiorari as procedural vehicles available to challenge parole board decisions. *See* note 6, *supra*. Fourth, as for Petitioner's reliance on *Eskridge*, the Court finds more recent authority from the Delaware Supreme Court regarding the procedures available to challenge parole decisions in Delaware to be controlling. *See id.* Furthermore, more recent precedent from this Court enforces the exhaustion requirement in habeas claims challenging parole board decisions. *See Kibler v. May*, C.A. No. 20-1275 (MN), 2023 WL 5974830 (D. Del. Sept. 14, 2023) (finding habeas claims challenging parole board decisions to be exhausted because they were raised in state mandamus proceeding); *Miles v. Williams*, 386 F. Supp. 2d 582, 586–88 (D. Del. 2005) (dismissing habeas petition containing unexhausted claims because further state review of claim was not clearly foreclosed where petitioner could potentially challenge parole board decision in state mandamus proceeding); *Land v. Carroll*, C.A. No. 03-843-JJF, 2004 WL 1454403 (D. Del. June 23, 2004) (recognizing writ of mandamus is "vehicle by which to challenge the Parole Board's decision" in Delaware state court); *Carter*, 2002 WL 531231 (dismissing habeas petition for failure to exhaust state remedies where parole board's revocation of conditional release could be presented in petition for writ of mandamus or petition for writ of certiorari).

15

The Court finds that Petitioner's only exhausted claim is the portion of Ground One related to the ex post facto claim addressed by the Delaware state courts.  The Court further concludes that, although the state courts may find Petitioner's unexhausted claims untimely, those claims are not clearly foreclosed from review in state court.  *See Lines v. Larkins*, 208 F.3d 153, 163 (3d Cir. 2000) (holding failure to exhaust is not excused "unless state law *clearly forecloses* state court review").  Therefore, the Petition contains both exhausted and unexhausted claims and is a mixed petition.  In the event the Court finds that Petitioner's claims are not time-barred, Petitioner has the option to:  (1) voluntarily dismiss his unexhausted claims and proceed only on the remaining exhausted portion of Ground One; or (2) request that the Court stay the instant proceedings until he has exhausted state court remedies.  If Petitioner requests a stay of these proceedings while he exhausts his claims in state court, he must include reasons a stay is warranted.

## IV.     CONCLUSION

For the reasons set forth above, it appears that the instant Petition is untimely.  Accordingly, Petitioner shall show cause why his Petition should not be dismissed for being time-barred.  In the event Petitioner can demonstrate that the Petition should be equitably tolled or that he falls within the actual innocence exception, the Petition is nonetheless a mixed Petition and Petitioner shall notify the Court how he would like to proceed considering the options provided.  The Court will enter a separate Order consistent with this Memorandum Opinion.